IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER TONE,** *et al.*, | : | Case No. 1:10CV891 |
| Plaintiffs, | : | Chief Judge Susan J. Dlott |
| v. | : | **ORDER** |
| **THOMAS J. VILSACK, Secretary of the Department of Agriguture,** *et al.*, | : | |
| Defendants. | : | |
| | : | |

Plaintiffs Christopher Tone, Paul Taulbee, and Sharon Taulbee (collectively, "Plaintiffs") have sued Thomas J. Vilsack, Secretary of the United States Department of Agriculture ("USDA"), Dallas Tonsanger, Undersecretary for Rural Development, Tammye Treviño, Administrator of the Rural Housing Service of USDA, and the Rural Housing Service ("RHS") (collectively, the "Federal Defendants") for a due process violation and violations of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, all stemming from RHS's alleged failure to implement several statutory loan servicing and loss mitigation provisions for borrowers whose home loans are guaranteed by RHS. Plaintiffs have also sued JP Morgan Chase Bank, N.A., Chase Home Financing, LLC, and U.S. Bank, N.A. (collectively, the "Bank Defendants") for breach of fiduciary duty, stemming from the Bank Defendants' alleged refusal to consider Plaintiffs for loss mitigation programs promulgated by RHS.

The Federal Defendants and the Chase Defendants[1] have moved to dismiss the Amended

---

[1]JP Morgan Chase Bank, N.A. and Chase Home Financing, LLC.

1

Complaint. (Docs. 27 and 23.) Also pending are Plaintiffs' Motion to Strike the Declaration of Tina M. Farlow (doc. 36) and Plaintiffs' Motion to Strike the Second Declaration of Tina M. Farlow and the Declaration of Devin Patterson or, in the alternative, Plaintiffs' Motion to Defer Pursuant to Federal Rule of Civil Procedure 56(d) (doc. 51). For the reasons that follow, the Federal Defendants' motion to dismiss is **GRANTED**, the Chase Defendants' motion to dismiss is **GRANTED**, and Plaintiffs' motions to strike are **DENIED AS MOOT**.

I. **Background**

    a. The Housing Act of 1949

The Housing Act of 1949, 42 U.S.C. § 1441 *et seq*. ("the Housing Act"), was enacted to promote "the elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, and the realization as soon as possible of the goal of a decent home and a suitable living environment for every American family." 42 U.S.C. § 1441. In furtherance of that goal, Section 502(a) of the Housing Act authorizes the Secretary of Agriculture (the "Secretary") to make direct loans to borrowers seeking to finance affordable housing in rural areas. *See* 42 U.S.C. § 1472(a). RHS, an agency within USDA, implements Section 502 programs. RHS acts as the lender and handles the servicing of Section 502(a) direct loans.

In 1990, Congress amended Section 502 of the Housing Act by adding subsection (h), entitled "Guaranteed Loans." Among other things, this subsection authorizes RHS to guarantee a loan made by a commercial lender to low-income borrowers who wish to purchase or construct a single-family residence in a rural area. *See* 42 U.S.C. § 1472(h). RHS is authorized to guarantee a loan in an amount equal to 90 percent of the loan. *Id*. The commercial lender is responsible for the processing, servicing, and liquidation (if necessary) of the loan. *See* 7 C.F.R.

§ 1980.309(f).

In 2009, Congress enacted the Helping Families Save Their Homes Act, which amended section 502(h) and included additional protections against foreclosure of RHS guaranteed loans. *See* 42 U.S.C. § 1472(h)(13)-(17). Among other things, the amendments direct mortgagees to engage in loss mitigation actions upon default or imminent default of RHS guaranteed loans. *See* 42 U.S.C. § 1472(h)(13). The amendments also give RHS the authority to approve the modification of guaranteed loans that are in default or facing imminent default. *See* 42 U.S.C. § 1472(h)(14). The amendments give RHS the authority to establish a program for the payment of partial claims to mortgagees who agree to apply the claim amount to the payment of a loan in default or facing imminent default. *Id.* The amendments give RHS the authority to establish a program for the assignment of guaranteed loans to the Secretary "upon the request of the mortgagee." 42 U.S.C. § 1472(h)(15). The amendments also give RHS the authority to guarantee a loan that is made to refinance an existing Section 502 direct or guaranteed loan. 42 U.S.C. § 1472(h)(17). Generally, Plaintiffs claim that the Federal Defendants have failed to implement these additional protections against default.

  b. <u>Applicability of the APA Provisions</u>

Plaintiffs' claims against the Federal Defendants must be evaluated under the provisions of the APA. The judicial review provisions of the APA establish a cause of action for parties adversely affected either by agency actions or by an agency's failure to act. 5 U.S.C. § 702; *see* 5 U.S.C. 551(13) (defining "agency action" as including an agency's failure to act). Section

3

706(1) provides for court intervention to "compel agency action unlawfully withheld."[2]  5 U.S.C. § 706(1).  However, a claim under Section 706(1) can proceed "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. Southern Utah Wilderness Alliance* ("SUWA"), 542 U.S. 55, 63-64 (2004).

The APA explicitly excludes from review those agency actions that are "committed to agency discretion by law."  5 U.S.C. § 701(a).  An agency action is committed to agency discretion by law if the statute does not provide a "meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  "A meaningful standard does not exist where the applicable law is so broadly drawn that the court has no standard or substantive priorities against which to measure an agency's discretion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1127 (6th Cir. 1996) (citing *Community Action of Laramie County, Inc. v. Bowen*, 866 F.2d 347, 353 (10th Cir.1989)).  The Sixth Circuit has stated that "courts do not have subject matter jurisdiction to review agency actions that are 'committed to agency discretion by law.'" *Madison-Hughes*, 80 F.3d at 1127.

  c.  <u>Facts and Procedural History</u>

Tone purchased a home in 2007 with a loan secured by JP Morgan Chase Bank, N.A.

---

[2] At the October 31, 2011 oral argument on the present motions, Plaintiffs contended that they are also pursing claims under Section 706(2).  Section 706(2) allows a court to "hold unlawful and set aside" agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5. U.S.C. § 706(2).  The Court will evaluate Plaintiffs' claims under Section 706(1) because the Amended Complaint does not seek to set aside agency action, rather it seeks to compel the Federal Defendants to implement or extend loan servicing and loss mitigation provisions to borrowers whose home loans are guaranteed by RHS.

("Chase"). (Doc. 19, ¶ 13.) The loan is guaranteed by RHS. (*Id.*) Tone filed for divorce in 2009 and subsequently discovered that he was behind on his mortgage payments. (*Id.* ¶¶ 39-40.) Tone contacted Chase, submitted a hardship letter and requested a loan modification, which Chase denied due to inadequate income. (*Id.* ¶¶ 41-43.) After Tone submitted additional documents in 2010, Chase offered Tone a forbearance plan which required Tone to make four small payments and one large payment over the course of five months. (*Id.* ¶¶ 44-45.) Tone alleges that a Chase representative informed him that he would receive a loan workout in lieu of making the final large payment. (*Id.* ¶ 46.) During the forbearance plan period, Tone received a Notice of Intent to Foreclose. (*Id.* ¶ 48.) As of September 22, 2010, Chase claims that the amount past due on Tone's loan is $11,790.64. (*Id.* ¶ 54.) Tone was not informed of any borrower protections offered to Section 502(h) guaranteed loan borrowers. (*Id.* ¶ 53.)

Paul Taulbee purchased a home in 2006 with a loan secured by Villa Mortgage Inc. (*Id.* ¶¶ 60-61.)[3] Villa later sold or assigned the loan to U.S. Bank. (Doc. 19 ¶ 64.) The loan is guaranteed by RHS. (*Id.* ¶ 61.) In 2009, Taulbee became unemployed. (*Id.* ¶ 66.) After falling behind on his mortgage payments, Taulbee made multiple attempts to contact U.S. Bank in the hope of securing a loan modification. (*Id.* ¶ 67-68.) Taulbee submitted financial information to U.S. Bank on two separate occasions. (*Id.* ¶ 68-69.) On March 1, 2010, U.S. Bank filed a complaint for foreclosure in the Butler County Court of Common Pleas. (*Id.* ¶ 61.) A U.S. Bank representative allegedly informed Taulbee that U.S. Bank would not offer any foreclosure alternatives until it obtains a judgment in foreclosure. (*Id.* ¶ 72.) As of September 2010, U.S.

---

[3] Paul and Sharon Taulbee were married in August of 2009, at which time Sharon Taulbee moved into the home. (*Id.* ¶ 60.) Sharon Taulbee is not a party to the note or mortgage. (*See* doc. 19-1.)

Bank claims that the amount past due on Taulbee's loan is $16,678.07, which includes $3,696 in legal fees. (*Id.* ¶ 76.)

On December 15, 2010, Plaintiffs filed a nine count complaint against the Federal Defendants and the Bank Defendants. (Doc. 1.) Plaintiffs filed an amended complaint on February 10, 2011 (the "Amended Complaint"). (Doc. 19.) In Counts One through Six, Plaintiffs allege that the Federal Defendants failed to implement various provisions of the Housing Act and that these violations are actionable under the APA. In Count Seven, Plaintiffs allege that RHS denied Plaintiffs due process "by failing to provide them with notice of adverse decisions or a right to appeal those decisions." (*Id.* ¶ 103.) In Counts Eight and Nine, Plaintiffs allege that the Chase Defendants and U.S. Bank, respectively, breached fiduciary duties "by failing to offer or properly consider [Plaintiffs] for the loss mitigation options promulgated by RHS." (*Id.* ¶¶ 106 and 110.)

On February 28, 2011, the Chase Defendants filed a motion to dismiss Count Eight of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Tone failed to plead facts supporting the existence of a fiduciary relationship between Tone and Chase. On March 18, 2011, the Federal Defendants filed a motion to dismiss Counts One through Seven of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Federal Defendants first allege that the Court lacks subject matter jurisdiction over Counts One, Four, Six, and Seven. Specifically, the Federal Defendants argue that the Court lacks jurisdiction over Counts One and Four because the APA excludes from judicial review those agency actions that are "committed to agency discretion by law." *See* 5 U.S.C. § 701(a). The Federal Defendants argue that the Court lacks jurisdiction over Counts One, Six, and Seven because Plaintiffs have not

6

suffered a cognizable injury or, alternatively, even assuming Plaintiffs had suffered a cognizable injury, the relief they seek would not redress the alleged injury. The Federal Defendants also contend that Counts One through Six fail to state a claim upon which relief can be granted.

## II. Standard of Review

### a. Fed. R. Civ. P. 12(b)(1) Motion to Dismiss

Generally, a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction falls into one of two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of the pleading itself and requires the Court to take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Ritchie*, 15 F.3d at 598. In contrast, a factual attack challenges the factual existence of subject matter jurisdiction and requires a court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The Federal Defendants' motion attacks the claim of jurisdiction based on the facts.

### b. Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949-50 (2009). To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570.

### III. THE FEDERAL DEFENDANTS' MOTION TO DISMISS

The Court will first address the Federal Defendants' motion to dismiss Counts One through Seven of the Amended Complaint.

    a.    <u>The Court does not have subject matter jurisdiction to review Counts One and Four.</u>

        1.    Count One–Moratorium Provision

Plaintiffs first claim that the Federal Defendants violated the APA by failing to extend, or by failing to require the Bank Defendants to extend, a moratorium consistent with Section 505(a) of the Housing Act to borrowers whose loans are guaranteed by RHS. Section 505(a), 42 U.S.C. § 1475(a), authorizes the Secretary to grant a loan payment moratorium to borrowers as follows:

> During any time that such loan is outstanding, the Secretary is authorized under regulations to be prescribed by him to grant a moratorium upon the payment of interest and principal on such loan for so long a period as he deems necessary, upon a showing by the borrower that due to circumstances beyond his control, he is unable to continue making payments of such principal and interest when due without unduly impairing his standard of living. In cases of extreme hardship under the foregoing circumstances, the Secretary is further authorized to cancel interest due and payable on such loans during the moratorium. * * *

8

As previously explained, the APA provides that judicial review is not applicable where agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Under Section 505(a), the Secretary is "authorized" to extend a payment moratorium based upon a borrower's circumstances. However, because the statute is so broadly drawn, this Court does not have a meaningful standard against which to measure the Secretary's discretion to determine the circumstances under which moratorium relief will be granted. As such, this Court declines to exercise judicial review. Count One must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *See Sheldon v. Vilsack*, Case No. 11-10487, 2012 WL 1068099 (E.D. Mich. March 29, 2012) (dismissing an identical claim for lack of subject matter jurisdiction).

Even if the Court were to conclude that it possessed subject matter jurisdiction, it would dismiss Count One pursuant to Fed. R. C. P. 12(b)(6). The crux of this dispute centers upon whether Section 505(a) moratorium relief applies to guaranteed loan borrowers. RHS, the agency responsible for administering this section, interprets Section 505(a) as applying only to Section 502(a) direct loans, not to loans that are merely guaranteed by RHS. The Court finds that RHS's interpretation is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984).

When reviewing an agency's construction of the statute which it administers, courts must address two questions. "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. Second, if the statute is silent on the specific issue, "the question for the court is whether the agency's answer is based on a permissible construction

9

of the statute." *Chevron*, 467 U.S. at 843.

Here, Section 505(a) is ambiguous as applied to guaranteed loan borrowers. On its face, Section 505(a) makes no distinction between direct loans and guaranteed loans; rather, the statute refers only to "such loan." 42 U.S.C. § 1475(a). When this provision was enacted in 1949, the Housing Act authorized the Secretary to extend direct loans to individuals, but it did not authorize the USDA or RHS to act as a guarantor of loans made by third parties. Thus, as originally enacted, the phrase "such loan" referred only to direct loans made by the agency. In 1990, when Congress amended the Housing Act to include the guaranteed loan program, Congress did not specify whether guaranteed loan borrowers had the rights of moratorium, refinancing, and appeal that accompany the direct loan program. Consequently, following the 1990 amendments, the language of Section 505(a) is ambiguous as applied to guaranteed loan borrowers.

Because of this ambiguity, the Court must proceed to step two of the *Chevron* analysis and consider whether RHS's interpretation of Section 505(a) is reasonable. The agency addressed this precise issue in the Federal Register in 1991. *See* 56 Fed. Reg. 15748, 15752 (April 17, 1991). When asked whether guaranteed borrowers are entitled to moratoriums, the agency stated no, explaining that "[t]he loan is the lender's loan, not [RHS's] loan." *Id*. at 15752. That is, because guaranteed loans are processed, serviced, and liquidated by commercial lenders, RHS cannot extend the same borrower protections afforded to direct loan recipients to guaranteed loan borrowers. *See* 7 C.F.R. § 1980.309(f). Although the agency "encourages lenders to work with borrowers and to offer servicing relief," the agency ultimately does not interpret Section 505(a) as providing moratorium relief to guaranteed loans. 56 Fed. Reg. at

15752. As a reasonable construction of an ambiguous statute, the agency's interpretation is entitled to deference. *Chevron*, 467 U.S. at 843. Thus, this Court would also dismiss Count One of the Amended Complaint under Fed. R. Civ. P. 12(b)(6).

### 2. Count Four–Loss Mitigation Provision

In Count Four, Plaintiffs contend that the Federal Defendants violated the APA by failing to require the Bank Defendants to participate in a loss mitigation program as described in Section 502(h)(13). Section 502(h)(13), 42 U.S.C. § 1472(h)(13), provides:

> Upon default or imminent default of any mortgage guaranteed under this subsection, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including actions such as special forbearance, loan modification, pre-foreclosure sale, deed in lieu of foreclosure, as required, support for borrower housing counseling, subordinate lien resolution, and borrower relocation), as provided for by the Secretary.

Even if this section could be construed to require lenders to participate in loss mitigation actions, the agency's decision not to enforce Section 502(h)(13) against a particular lender is "committed to agency discretion by law" and is not subject to judicial review. *See Heckler*, 470 U.S. at 830; *Gillis v. HHS*, 759 F.2d 565, 575-77 (6th Cir. 1985) (concluding that "[t]he mechanism by and extent to which HHS 'monitors' as well as 'enforces' compliance fall squarely within the agency's exercise of discretion," and therefore an alleged failure to monitor and enforce these obligations was not reviewable under the APA). As such, Count One must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *See Sheldon v. Vilsack*, Case No. 11-10487, 2012 WL 1068099 (E.D. Mich. March 29, 2012) (dismissing an identical claim for lack of subject matter jurisdiction).

  b. <u>Plaintiffs have failed to state a claim upon which relief can be granted in Counts Two, Three, Five, Six, and Seven.</u>

   1. Count Two–Refinancing Provisions

In Count Two, Plaintiffs claim that the Federal Defendants violated the APA by failing to implement provisions of Sections 501(a), 502(h)(9), and 502(h)(17) of Housing Act, thereby violating Plaintiffs' right to have their guaranteed loans refinanced by another RHS guaranteed loan or by a direct and subsidized RHS loan.

Section 501(a), 42 U.S.C. § 1471(a), authorizes the Secretary to refinance a home loan which, "if not refinanced, is likely to result (because of circumstances beyond the control of the applicant) at an early date in the loss of the applicant's necessary dwelling or essential farm services." Plaintiffs maintain that Section 501(a) requires RHS to refinance both direct and guaranteed loans.

Section 502(h)(9), 42 U.S.C. § 1472(h)(9), states:

> Any guaranteed loan under this subsection may be refinanced and
> extended in accordance with terms and conditions that the
> Secretary shall prescribe, but in no event for an additional amount
> or term which exceeds the limitations under this subsection.

Plaintiffs contend that Section 502(h)(9) requires RHS to refinance guaranteed loans with a Section 502(a) direct or subsidized RHS loan.

Section 502(h)(17)(A), 42 U.S.C. § 1472(h)(17)(A), provides:

> Upon the request of the borrower, the Secretary shall, to the extent
> provided in appropriation Acts and subject to subparagraph (F),
> guarantee a loan that is made to refinance an existing loan that is
> made under this section or guaranteed under this subsection, and

>> that the Secretary determines complies with the requirements of this paragraph.

Plaintiffs argue that Section 502(17) requires RHS to guarantee a refinanced loan, and that RHS has never implemented this provision.

Count Two must be dismissed. First, Sections 501(a) and 502(h)(9) do not *require* the Secretary to take any action. Section 501(a) authorizes the Secretary to refinance a home loan which, if not refinanced, will result in loss of the home. Section 502(h)(9) simply provides that a guaranteed loan may be refinanced. Plaintiffs provide no support for the contention that either of these provisions *require* RHS to refinance guaranteed loans with a Section 502(a) direct or subsidized RHS loan. As previously stated, judicial review of an agency's action or failure to act under the APA is limited to "discrete" actions that are "legally required." *SUWA*, 542 U.S. at 63.

As to Section 502(h)(17), the Federal Defendants contend that RHS has fully implemented a refinancing program, but that Plaintiffs simply are not eligible to participate. The Federal Defendants cite to a series of Administrative Notices published by RHS that implement section 502(h)(17). *See* RD AN No. 4549 (1980-D), January 19, 2011. The Administrative Notices explain that the refinancing program excludes from participation loans that are "presently not performing or for borrowers who are not current on their existing [direct or guaranteed] loan." *Id*. Thus, the Federal Defendants argue, Plaintiffs have failed to state a claim upon which relief can be granted because they are not eligible for refinancing under this program. The Court agrees. Count Two of the Amended Complaint is dismissed.

13

      2.      Count Three–Assignment and Reamortization Provisions

In Count Three, Plaintiffs contend that the Federal Defendants violated the APA by failing to implement Sections 502(h)(15), 502(h)(17), and 517 of Housing Act, thereby violating Plaintiffs' right to have their guaranteed loans assigned or reamortized.

Section 502(h)(15), 42 U.S.C. § 1472(h)(15), provides that the "Secretary may establish a program for assignment to the Secretary, upon request of the mortgagee, of a mortgage on a 1- to 4-family residence." Plaintiffs claim that RHS failed to implement this program. Section 502(h)(17), as discussed *supra*, provides that the Secretary may guarantee a loan that is made to refinance an existing loan if certain conditions are met. Section 517, 42 U.S.C. § 1487(d)(3), provides:

> Each loan made by the Secretary or other lenders under this subchapter that is insured or guaranteed in accordance with this subsection shall, *when offered for sale to the public*, be accompanied by agreements for the benefit of the borrower under the loan that provide that--
>
> (A) the purchaser or any assignee of the loan shall not diminish any substantive or procedural right of the borrower arising under this subchapter;
>
> (B) upon any substantial default of the borrower, but prior to foreclosure, the loan shall be assigned to the Secretary for the purpose of avoiding foreclosure; and
>
> (C) following any assignment under subparagraph (B) and before commencing any action to foreclose or otherwise dispossess the borrower, the Secretary shall afford the borrower all substantive and procedural rights arising under this subchapter, including consideration for interest subsidy, moratorium, reamortization, refinancing, and appeal of any adverse decision to an impartial officer. (emphasis added).

Count Three must be dismissed. Section 502(h)(15) does not require the Secretary to

take action. This section simply "authorizes" the Secretary to establish a program which would allow guaranteed lenders to assign loans to the Secretary. And, as the Federal Defendants correctly argue, Section 502(h)(17) does not allow for assignment or reamortization of loans. As to Section 517, this provision applies only in the context of loan asset sales. Count Three of the Amended Complaint is dismissed.

### 3. Count Five–Loan Modification and Partial Claims Provisions

In Count Five, Plaintiffs contend that the Federal Defendants violated the APA by failing to require the Banks to provide loan modifications and partial claims to guaranteed loan participants as described in Section 502(h)(14). Section 502(h)(14), 42 U.S.C. § 1472(h)(14), provides in relevant part:

> The Secretary may authorize the modification of mortgages, and establish a program for payment of a partial claim to a mortgagee that agrees to apply the claim amount to payment of a mortgage on a 1- to 4-family residence, for mortgages that are in default or face imminent default, as defined by the Secretary.

As with the previous claims, Count Five must be dismissed because Section 502(h)(14) does not require the Secretary to take any discrete agency action with respect to guaranteed borrowers or the Banks. This section allows the Secretary to authorize mortgage modifications and establish a program for partial claims. It does not require, as Plaintiffs suggest, that the Secretary force lenders to provide loan modifications or that the Secretary force lenders to participate in a partial claims program. Count Five of the Amended Complaint is dismissed.

4. Counts Six and Seven - Violations of Due Process

In Count Six, Plaintiffs contend that the Federal Defendants have violated the APA by failing to implement Section 510(g) of the Housing Act, and Section 271, *et seq*., of the Agricultural Reorganization act of 1994, 7 U.S.C. §§ 6991-6999, thereby violating Plaintiffs' statutory due process rights. In Count Seven, Plaintiffs allege that the Federal Defendants failed to provide them with notice of adverse decisions and a right to appeal those decisions, thereby violating Plaintiffs' due process rights.

Section 510(g), 42 U.S.C. § 1480(g), provides that the Secretary shall have the power to:

> [I]ssue rules and regulations which assure that applicants denied assistance under this subchapter or persons or organizations whose assistance under this subchapter is being substantially reduced or terminated are given written notice of the reasons for denial, reduction or termination and are provided at least an opportunity to appeal an adverse decision and to present additional information relevant to that decision to a person, other than the person making the original determination, who has authority to reverse the decision, except that rules issued under this subsection may not exclude from their coverage decisions made by the Secretary that are not based on objective standards contained in published regulations.

Section 274 of the Agricultural Reorganization Act of 1994, 7 U.S.C. § 6994, provides:

> Not later than 10 working days after an adverse decision is made that affects the participant, the Secretary shall provide the participant with written notice of such adverse decision and the rights available to the participant under this subchapter or other law for the review of such adverse decision.

Plaintiffs claim that they are entitled to a hearing by virtue of the fact that the Bank Defendants have decided to terminate assistance under Title V by filing foreclosure notices.

The Court will dismiss Counts Six and Seven because Plaintiffs lack standing to pursue these claims. Article III, § 2, of the Constitution limits the federal judicial power to the adjudication of "Cases" and "Controversies." One component of the case-or-controversy requirement is standing, which requires a plaintiff to demonstrate the elements of injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). The alleged injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id*. (internal quotations and citations omitted).

First, Section 510(g) applies only to borrowers whose assistance is being "substantially reduced or terminated" by the agency. As the Federal Defendants correctly argue, RHS has not substantially reduced or terminated assistance to Plaintiffs, nor has RHS issued an adverse decision with respect to Plaintiffs. Indeed, the heart of Plaintiffs' claims relate to actions taken by the Bank Defendants, not the Federal Defendants. The adverse decisions at issue are the Bank Defendants' decisions to foreclose on Plaintiffs' respective loans. Section 510(g) does not require the Federal Defendants to provide Plaintiffs with an opportunity to appeal the decisions of third parties. Furthermore, because the Federal Defendants have not denied, reduced or terminated assistance to Plaintiffs, Plaintiffs also lack standing to claim a due process violation.

As to the allegation that the Federal Defendants have failed to implement Section 274 of the Agricultural Reorganization Act, those provisions have been enacted at 7 U.S.C. §§ 6991-6999. *See* Pub. L. No. 103-354, §§ 271-283, 108 Stat. 3178, 3232-35 (1994). Specifically, those provisions have been implemented with respect to Section 502(h) guaranteed loan borrowers. *See* 7 C.F.R. § 1980.399 (describing the process of appealing "an RHS administrative decision

that directly and adversely impacts them."). Notably, "[d]ecisions made by the Lender are not covered by this paragraph even if RHS concurrence is required before the Lender can proceed." *Id*. Further, this provision explicitly states that a "Lender's decision to deny servicing relief is not subject to appeal" and that a "Lender's decision to accelerate the account is not subject to appeal." *Id*. At (b)(2)-(3). Consequently, Plaintiffs cannot demonstrate an injury in fact. Because Plaintiffs cannot demonstrate an injury in fact, Counts Six and Seven of the Amended Complaint are dismissed.

The Federal Defendants' Motion to Dismiss Counts One through Seven of the Amended Complaint is **GRANTED**.[4]

## IV. CHASE DEFENDANTS' MOTION TO DISMISS

In Count Eight, Plaintiff Tone alleges that Chase breached fiduciary duties to Tone by "failing to offer or properly consider him for the loss mitigation options promulgated by the RHS." (Doc. 19 at ¶106.) Chase moves to dismiss this claim under Rule 12(b)(6), arguing that Tone has alleged no facts to support the existence of a fiduciary relationship between the parties. The Court agrees.

Under Ohio law, "[t]he relationship of debtor and creditor without more is not a fiduciary relationship." *Umbaugh Pole Bldg. v. Scott*, 58 Ohio St. 2d 282, 286 (1979). A fiduciary relationship may be "created out of an informal relationship, but this is done only when both

---

[4] Also pending are Plaintiffs' Motion to Strike Declaration of Tina M. Farlow (doc. 36) and Plaintiffs' Motion to Strike Second Declaration of Tina M. Farlow and Declaration of Devin Patterson or, in the alternative, Plaintiffs' Motion to Defer Pursuant to Federal Rule of Civil Procedure 56(d) (doc. 51). The Court found it unnecessary to rely on either of these affidavits in its consideration of the pending motions. Consequently, Plaintiffs' motions are rendered moot.

parties understand that a special trust or confidence has been reposed." *Id*. Even when advice is rendered from creditor to debtor, if the parties are operating at arm's length and aiming to protect their individual commercial interests, their relationship remains a business one. *Id*. at 287.

The Amended Complaint contains the following allegations: (1) Tone defaulted on his loan (doc. 19, ¶ 40); (2) Tone contacted Chase about the default and Chase requested financial documents from him (*id*. ¶ 41); (3) after reviewing his financial documents, Chase rejected Tone's application for a loan workout due to inadequate income (*id*. ¶43); (4) Chase offered Tone a forbearance plan which required Tone to make four small payments and one large payment over the course of five months (*id*. ¶45); (5) a Chase representative informed Tone that he would receive a loan workout in lieu of making the final large payment (*id*. ¶46); (6) Chase sent Tone a notice of intent to foreclose during the forbearance period (*id*. ¶48); and (6) Chase "has not considered a restructuring agreement that would give [Tone] a moratorium on his payments, loan reamortization, or refinancing or other assistance" (*id*. ¶55). Even when reading the allegations in the Amended Complaint as true, these facts, without more, do not establish a fiduciary relationship. Tone does not allege that Chase and Tone shared a mutual understanding "that a special trust or confidence [had] been reposed," nor does the Amended Complaint contain facts that would permit such an inference. *Umbaugh*, 58 Ohio St. 2d at 286.

The Chase Defendants' Motion to Dismiss Count Eight of the Amended Complaint is **GRANTED**.

V.	CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Federal Defendants' motion to dismiss Counts One through Seven (doc. 27), the Court **GRANTS** the Chase Defendants' motion to dismiss Count Eight (doc. 23), and the Court **DENIES AS MOOT** Plaintiffs' Motion to Strike the Declaration of Tina M. Farlow (doc. 36) and Plaintiffs' Motion to Strike the Second Declaration of Tina M. Farlow and Declaration of Devin Patterson or, in the alternative, Plaintiffs' Motion to Defer Pursuant to Federal Rule of Civil Procedure 56(d) (doc. 51).

IT IS SO ORDERED.

    s/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court